**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMIE BUSHELL, on her own behalf and on behalf of all others similarly situated, | Civil Action No. 17-cv-2021 |
| Plaintiff, | |
| v. | |
| UNITEDHEALTH GROUP INC., OXFORD HEALTH PLANS, INC., OXFORD HEALTH INSURANCE, INC., and OXFORD HEALTH PLANS (NY), INC., | **CLASS ACTION COMPLAINT** |
| Defendants. | |

Plaintiff Jamie Bushell ("Plaintiff") complains as follows on her own behalf and on behalf of all others similarly situated, based on the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances by herself and her undersigned counsel, against Defendants UnitedHealth Group Inc., Oxford Health Plans, Inc., Oxford Health Insurance, Inc., and Oxford Health Plans (NY), Inc. (collectively, "United" or "Defendants"):

## INTRODUCTION

1.      Plaintiff suffers from anorexia nervosa, a severe mental illness for which she receives nutritional counseling from a licensed and registered dietitian, Ashley Bade RD, LDN, CSP, with specialized training in and experience with eating disorders. Nutritional counseling is recognized by the Academy of Nutrition and Dietetics, formerly known as the American Dietetic Association, as an "essential component" of treatment for Plaintiff's condition.

2.      Plaintiff is a beneficiary of the Oxford Freedom Plan ("Plaintiff's Plan"), a health insurance plan issued and administered by United, and which is subject to ERISA. United is the claims administrator for Plaintiff's Plan and exercises discretion with respect to the Plan such

that United is an ERISA fiduciary. Plaintiff's Plan broadly covers in-network and out-of-network treatment for mental illness, including eating disorders, on both an inpatient and outpatient basis.

3.     Plaintiff has repeatedly sought coverage under her plan for her nutritional counseling sessions. Yet, United has categorically denied coverage. As a result, Plaintiff has been forced to pay (and continues to pay) out-of-pocket for these services.

4.     Although United refused to cover Plaintiff's claims, United provides coverage under Plaintiff's Plan for nutritional counseling for non-mental health conditions, such as diabetes, and covers such counseling when provided by dieticians and nutritionists. In doing so, United breached its fiduciary duties and other legal obligations by causing its plans to discriminate against claimants with mental illnesses and their health care providers.

5.     United's denials of coverage for nutritional counseling for eating disorders violate the Affordable Care Act ("ACA"), including (a) 42 U.S.C. § 300gg-6, incorporating 42 U.S.C. § 18022, which classifies mental health and substance abuse services as "essential health benefits" subject to federal mental health parity protections provided in the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"), and (b) 42 U.S.C. § 300gg-5, which prohibits discrimination against providers acting within the scope of their license. United has further violated New York State's mental health parity law, known as "Timothy's Law." The ACA and Timothy's Law have all been explicitly incorporated into ERISA and, by operation of law, become a term of Plaintiff's Plan.

6.     Plaintiff brings this action on her own behalf and on behalf of all other similarly situated individuals, seeking the relief identified below.

5944270.1

## THE PARTIES

### Plaintiff

7.      Plaintiff is insured as a beneficiary under a fully-insured, non-grandfathered New York small group commercial policy sponsored by ProCalc, Inc., through her father who is a participant in the plan. This policy, identified as the Oxford Freedom Plan, is governed by ERISA and is both insured and administered by United. The applicable Certificate of Coverage ("COC"), which includes a logo for "UnitedHealthcare/Oxford" on the front page, specifies that the plan was issued by Defendant Oxford Health Insurance, Inc. ("OHI"). Plaintiff resides in Framingham, Massachusetts, while her father resides in Port Washington, New York.

### Defendants

8.      Defendant UnitedHealth Group Inc. ("UnitedHealth") issues and administers health care plans around the country through its various wholly owned and controlled subsidiaries, including Defendants OHI, Oxford Health Plans, Inc. ("OHP"), and Oxford Health Plans (NY), Inc. ("Oxford-NY"). Based on information and belief, UnitedHealth has caused OHI, OHP and Oxford-NY to promulgate the internal coverage guidelines that led to the denials of Plaintiff's claims.

9.      OHI operates as a managed health care company, providing health insurance and other products in New York and other states. OHI is an affiliate of OHP and Oxford-NY, and its ultimate parent is UnitedHealth. OHI is the direct issuer and administrator of Plaintiff's Plan.

10.     On July 29, 2004, OHP merged with UnitedHealth and became its wholly owned subsidiary. OHP operates through and controls Oxford-NY.

11.     Oxford-NY was incorporated on April 19, 1985 under New York State Law as a for-profit corporation for the purpose of providing comprehensive health insurance services. It is

5944270.1

a wholly owned and controlled subsidiary of OHP, and through OHP is a wholly owned and controlled subsidiary of UnitedHealth. Oxford-NY has a principal place of business located in this District.

12.     Under UnitedHealth's oversight and control, OHI, OHP, and Oxford-NY (collectively, "Oxford") exercise discretion in connection with the administration of Plaintiff's Plan. Due to the authority each of the Defendants has to adopt policies and make decisions with respect to benefit determinations relating to the United plans, they each are fiduciaries under ERISA.

13.     Due to the manner in which Defendants function with respect to their plans, including by exercising discretion to make benefit determinations, they are all functional ERISA fiduciaries and, as such, must comply with fiduciary standards.

## JURISDICTION AND VENUE

14.     United's actions in administering employer-sponsored health care plans, including determining reimbursements for Plaintiff under the Oxford Freedom Plan, are governed by ERISA, 29 U.S.C. § 1001, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 1132(e) (ERISA).

15.     Venue is appropriate in this District. The insurance policy relevant to this action was issued by United in New York, and the Oxford Freedom Plan Certificate expressly states that "[i]f a dispute arises under this Certificate, it must be resolved in a court located in the State of New York." Moreover, upon information and belief, the policies and practices at issue were developed in this District.

5944270.1

## STATEMENT OF FACTS

16.    Plaintiff suffers from a diagnosed mental health condition of anorexia nervosa, with purging, representing one of various conditions generally identified as an "eating disorder." As part of her prescribed treatment regimen, Plaintiff has been receiving nutritional counseling from Ashley Bade, RN, LDN, CSP, a licensed and registered dietitian. Ms. Bade is a Registered Dietitian ("RD") with the Commission on Dietetic Registration, a Licensed Dietitian/Nutritionist ("LDN") with the State of Massachusetts, and a Certified Specialist in Pediatrics ("CSP") with the Commission on Dietetic Registration. She further has specialized training and experience providing nutritional counseling to patients with eating disorders, such as Plaintiff.

17.    Prior to Plaintiff beginning to see Ms. Bade for nutritional counseling on February 3, 2016, Plaintiff had received residential, partial hospitalization, and intensive outpatient treatment. As part of her transition to outpatient treatment, her treating providers ensured that Plaintiff had an outpatient team that included a medical doctor, psychiatrist, therapist, and dietitian. Plaintiff's treating mental health care providers work in conjunction with Ms. Bade as part of providing appropriate care to Plaintiff, as she seeks to gain control over her disorder. Plaintiff paid Ms. Bade directly for her services.

18.    Plaintiff's Plan broadly covers outpatient mental health care:

We Cover outpatient mental health care services, including but not limited to partial hospitalization program services and intensive outpatient program services, relating to the diagnosis and treatment of mental, nervous and emotional disorders. Coverage for outpatient services for mental health care includes Facilities that have been issued an operating certificate pursuant to Article 31 of the New York Mental Hygiene Law or are operated by the New York State Office of Mental Health and, in other states, to similarly licensed or certified Facilities; and services provided by a licensed psychiatrist or psychologist; a licensed clinical social worker who has at least three years of additional experience in psychotherapy; a licensed mental health counselor; a licensed marriage and family therapist; a licensed psychoanalyst; or a professional corporation or a university faculty practice corporation thereof.

5944270.1

19.     Plaintiff submitted claims to United for coverage under her plan for the first four sessions of nutritional counseling (February 3, 9, 16 and 17, 2016), each of which was denied by United through an Explanation of Benefits ("EOB") it issued, dated, respectively, February 23 and 24, 2016, and two on February 26, 2016.

20.     Under the letterhead of Oxford-NY and with the logo "UnitedHealthcare/Oxford," each EOB was identical, reporting the date of the service received by Plaintiff, describing the service as "Med Nutrition" (with a five-digit CPT Code 97803), reporting that the "Amount Billed" was $200, identifying the "Maximum Amount" covered under the plan as $0.00, and then stating that the "Amount You Owe" was $200. Explanation code "D1" was used to explain each benefit denial, which cryptically stated: "Payment for services are denied. This is not a covered service."

21.     United's denials violated the claims procedures of ERISA, 29 CFR § 2560.503-1(l), which provides that, in notifying a beneficiary of an "adverse benefit determination," the administrator must include not only "the specific reason or reasons for the adverse determination," but also a "reference to the specific plan provisions on which the determination is based." 29 CFR § 2560.503-1(g)(1). United violated this provision by only asserting in general terms that Plaintiff's treatment was "not a covered service," without providing reference or citation to "the specific plan provisions" which served as the basis for this conclusion.

22.     Plaintiff appealed these denials to United by letter dated March 2, 2016. The appeal letter, drafted by Ms. Bade, explained Plaintiff's medical history while a United insured, stating:

> As you know from previous, recent medical claims, Jamie has been receiving intensive treatment for her eating disorder at the residential, partial, [intensive outpatient ("IOP")], and outpatient levels since 12/7/15. She has in fact been receiving treatment for her eating disorder, however, since 9/4/2015, but at this

5944270.1

time she was covered under different insurance. This has been a persistent, long standing medical issue significantly impacting her ability to function in daily life. In an effort to ease into a successful transition to just an outpatient level of treatment, it is absolutely medically necessary for Jamie to see a dietitian to help her maintain the recommended meal plan and make changes as medically necessary and appropriate as her recovery progresses.

Eating disorders are multifaceted and require the collaboration of a team to ensure adequate recovery for a patient. As a dietitian on Jamie's team, Ashley Bade plays a crucial role by bringing significant education and knowledge about the physiological causes and effects of malnutrition that are unique to a dietitian's educational and clinical training. Ashley, unlike other members of the team, uses and relies on Jamie's diet history to determine potential for malnutrition and/or inappropriate weight changes. Ashley provides another resource for Jamie to discuss what barriers or roadblocks, either external or internal are impacting her ability to make the recommended or necessary changes and works with her to problem solve these issues.

23.    Through the appeal, Plaintiff asked United to "reconsider your previous decision to deny these claims and allow coverage for medical nutrition appointments" with Ms. Bade, "requesting that all previous and future services with this provider be covered."

24.    A letter from Ms. Bade dated March 16, 2016 was subsequently submitted to United in support of Plaintiff's appeal. After detailing Plaintiff's medical history with her eating disorder, including how she "has experienced many dangerous behaviors" which "if not monitored for regularly, counseled on and rehabilitated with nutrition therapy and psychological counseling can easily lead to the need for admittance to a hospital and then subsequent residential eating disorder programs," Ms. Bade stated: "I urge you to consider coverage of her nutrition counseling therapy visits as this support can foster a full recovery from Jamie's eating disorder." She then requested United's approval of 52 visits to be covered for one year, commencing with Plaintiff's first visit with Ms. Bade on February 3, 2016.

25.    Although Plaintiff's Plan required United to respond to her appeal within 30 days as to the denied post-service claims and within 15 days as to the requested pre-service claims,

5944270.1

United did not do so for over three months. By letter dated June 21, 2016, United denied

Plaintiff's appeal, stating:

> We reviewed the request received March 26, 2016, to review our previous decision regarding the service(s) that you received. We understand the appeal to state that service(s) should be reconsidered for payment.
>
> We carefully reviewed the documentation submitted, our payment policies and the limitations, exclusions and other terms of your Benefit Plan, including any applicable Riders, Amendments, and Notices.
>
> Based on our review, according to your Benefit Plan, under Section – XIII Exclusions, subsection Services not listed, this request for payment was processed correctly:
>
>> We do not Cover services that are not listed in this Certificate as being Covered.
>
> Because the claim(s) for this service(s) was processed according to the above plan provision(s), our original determination remains unchanged, and the determination is upheld.
>
> According to the exclusions listed in your health benefits plan, . . . the claim(s) has been denied correctly as not a covered benefit.

26.    United entirely failed to address Plaintiff's pre-service request for 52 sessions.

27.    While the letter then stated that "you or your authorized representative may

request a second level review," this was only presented as an optional step, not mandatory, as the

letter confirmed that she had exhausted her requirement to pursue administrative appeals, stating:

"You have the right to file a civil action under Section 502(a) of ERISA."

28.    While Plaintiff was not required to file a second level appeal prior to initiating

this lawsuit, she nevertheless did so, by letter dated July 5, 2016. In this letter, Plaintiff detailed

the significance of nutritional counseling as part of the treatment protocol for an eating disorder,

stating, *inter alia*:

> I understand that per my Benefit plan and the subsequent decision to deny my request for coverage, Oxford does not cover medical nutrition therapy (codes 97802 and 97803), but according to clinical research and evidence-based practice

8

in the field of eating disorder treatment, medical nutrition therapy plays a crucial role in long-term recovery. Not only is it economically ineffective, but the decision to limit nutrition intervention is also clinically unsound. Eating disorders are biologically based mental illnesses that have severe physical health ramifications, including change in pulse, blood pressure, body temperature, orthostatic changes, electrolyte imbalances, cardiac arrhythmias, gastrointestinal issues, just to name a few. Thus this is why nutrition treatment for eating disorders should not be found on the list of benefit exclusions, as it is on my current plan.

29.    Plaintiff then cited evidence-based practice and research articles which "affirm the integral role of registered dietitians as members of eating disorder treatment teams," citing, among other things, <u>Position of the American Dietetic Association: Nutrition Intervention in the Treatment of Eating Disorders</u>, *Journal of American Dietetic Association*, 2011; 111: 1236-1241.

30.    On the same date, July 5, 2016, Plaintiff sent an additional letter as part of her appeal in which she "request[ed] copies of all documents, records, and other information relevant to [her] appeal, as well as copies of any internal rule, guideline or protocol that [United] relied on to make this payment decision," and further "request[ed] an explanation of the scientific or clinical judgment that [United] relied upon in making this benefit decision." Under ERISA, a beneficiary is entitled to all of this information when challenging an adverse benefit determination.

31.    Over three months later, United responded to the second level appeal by letter dated October 27, 2016, ironically asserting that Plaintiff's appeal was not timely:

We regret to inform you that the decision was made to deny your appeal request because we did not receive it within 60 business days from the date of the first level determination letter, as required by applicable regulations. The first level determination letter was issued on June 21, 2016. Our decision to deny coverage for this service is therefore unchanged, and you are responsible for all related costs.

In fact, however, Plaintiff's appeal was timely and simply had not been adjudicated by United in a timely or complete fashion. Moreover, United entirely failed to provide Plaintiff with "copies

9

of all documents, records, and other information relevant to [her] appeal, as well as copies of any internal rule, guideline or protocol that [United] relied on to make this payment decision," pursuant to Plaintiff's explicit July 5, 2016 request.

32.    In the meantime, Plaintiff continued to see Ms. Bade for nutritional counseling as part of her treatment protocol. Each time, Plaintiff or her provider submitted benefits to United, which continued to deny coverage, finding that the treatment was not a covered benefit.

33.    In order to ensure that her appeal covered her additional services, by November 9, 2016, Plaintiff filed a new appeal of United's consistent denial of coverage for nutritional counseling for her eating disorder. In this appeal she listed all of the treatments which had been denied by United, which consisted of thirty treatments between February 3, 2016 and October 19, 2016. For each of those denied treatments, Plaintiff identified the dates of service and claim number for each service that had been denied pursuant to an EOB issued by United.

34.    In addition to reiterating that, according to generally accepted standards of medical practice, nutritional counseling is an essential part of a treatment plan for eating disorders, Plaintiff also sought reconsideration of all of the denials based on United's legal violations, stating:

> As a further basis for my appeal, I would note that your decision to deny coverage for nutritional counseling appears to be a violation of the Federal Mental Health Parity Act, which has been incorporated into [ERISA] at 29 U.S.C. § 1185a. This treatment is medically necessary and part of my treatment plan for a behavioral health condition. As a result, you cannot deny coverage for it when you would cover it with regard to other medical conditions if such nutritional counseling is medically necessary.

35.    By letter dated December 13, 2016, United issued a denial of the new appeal on letterhead from "UnitedHealthcare/Oxford." In its denial, United stated:

> We reviewed the request received November 17, 2016, to review our previous decision regarding the service(s) you received. We understand the appeal to state

5944270.1

that the claim should be reconsidered for reimbursement because nutritional counseling service(s) is an essential component of your treatment.

We carefully reviewed the documentation submitted, our payment policies and the limitations, exclusions and other terms of your Benefit Plan, including any applicable Riders, Amendments, and Notices.

Based on our review, according to your Benefit Plan, under the Section – XVII Exclusions and Limitations, subsection No coverage is available under this Certificate for the following, this request for payment was processed correctly:

> We do not Cover services that are not listed in this Certificate as being Covered.

Because the claim(s) for this service(s) was processed according to the above plan provision(s), our original determination remains unchanged, and the determination is upheld.

According to the exclusions listed in your health benefits plan, . . . the claim(s) has been denied as a not covered benefit.

36.     The letter made clear that Plaintiff had exhausted her administrative remedy, by stating: "You have the right to file a civil action under Section 502(a) of ERISA."

37.     The letter then added that Plaintiff "may request a second level review," either by telephone or letter. While Plaintiff was not obligated to pursue the second level review, she did so through a January 20, 2017 telephone call, during which she expressly initiated a second level appeal and sought reconsideration of the adverse benefit determination. Thereafter, Plaintiff wrote United, at the address it provided for pursuing appeals, to confirm that she had initiated the second level appeal through her telephone call.

38.     By letter dated February 15, 2017, United denied Plaintiff's second level appeal, under the "UnitedHealthcare/Oxford" letterhead. It repeated the identical reason it had articulated in denying the first level appeal, stating:

> Based on our review, according to your Benefit Plan, under the Exclusions and Limitations, subsection Services Not Listed, this request for payment was processed correctly. Your plan states:

5944270.1

We do not Cover services that are not listed in this Certificate as being Covered.

Because the claim(s) for this service(s) was processed according to the above plan provision(s), our original determination remains unchanged, and the determination is upheld. . . .

According to the guidelines of your health benefits plan, Current Procedural Terminology (CPT) code 97803 (Medical nutrition therapy; re-assessment and intervention, individual, face-to-face with the patient, each 15 minutes) is not a covered procedure. Therefore, the claims have been denied correctly as not covered.

39.     The letter then concluded: "***Please understand that this is your final level of internal appeal with us.***" This was followed by United's statement that "[y]ou have the right to file a civil action under Section 502(a) of ERISA."

40.     As the claims administrator responsible for interpreting and administering the Oxford Freedom Plan and similar United plans issued nationwide, vested with responsibility for making final benefit determinations, United is an ERISA fiduciary.

41.     As an ERISA fiduciary, United is required to discharge its duties consistent with 29 U.S.C. § 1104, which requires (among other things) that it do so "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." It must do so with "care, skill, prudence, and diligence" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. Among other things, this means that United is required to ensure that it administers Plaintiff's Plan in a manner that complies with any applicable state or federal law.

**VIOLATION OF THE ACA'S FEDERAL PARITY ACT REQUIREMENTS**

42.     The Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act ("Federal Parity Act") prohibits discrimination with respect to benefits available to

5944270.1

insureds who suffer from mental health and substance abuse disorders. As set forth in 29 U.S.C. § 1185d, 42 U.S.C. §300gg, 45 C.F.R. § 156.115 and 45 C.F.R. § 146.136, the requirements of the Federal Parity Act, including the regulations issued pursuant to it, are applicable to Plaintiff's Plan because it is a small group market ERISA plan.

43.    In defining the parity requirements, the relevant federal agencies have explained that not only is it impermissible for a plan to impose more restrictive quantitative limitations on mental health coverage than it does for medical or surgical services, but a plan "may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 45 C.F.R. § 146.136(c)(4)(i).

44.    The regulations provide an "illustrative list of nonquantitative treatment limitations," which include, but are not limited to, "[s]tandards for provider admission to participate in a network, including reimbursement rates," and "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 45 C.F.R. § 146.136(c)(4)(ii).

45.    Although treatment for eating disorders (and specifically for anorexia nervosa, which has the highest mortality rate of all psychiatric disorders) is an essential health benefit, and although Plaintiff's Plan is required to cover medically necessary services "provided in accordance with generally-accepted standards of medical practice," and although it has long been

13

"the position of the American Dietetic Association that nutrition intervention, including nutritional counseling, by a registered dietitian (RD) is an essential component of the team treatment of patients with anorexia nervosa, bulimia nervosa, and other eating disorders during assessment and treatment across the continuum of care," United fails to reimburse medically necessary treatment for this essential health benefit.

46.    United interprets the Oxford Freedom Plan to cover nutritional counseling for **_non-mental health_** medical conditions, however. In particular, the Oxford Freedom Plan Certificate of Coverage, which was drafted by United, provides:

> **Self-Management Education.** Diabetes self-management education is education designed to educate persons with diabetes as to the proper self-management and treatment of their diabetic condition including information on proper diets. We Cover education on self-management and nutrition when: diabetes is initially diagnosed; a Physician diagnoses a significant change in Your symptoms or condition which necessitates a change in Your self-management education; or when a refresher course is necessary.

47.    This section also provides that covered nutritional counseling for medical conditions can be provided by, among others, "non-Physician medical educators" including "certified dietitians" and "registered dietitians." Moreover, it adds that "Education will also be provided in Your home when Medically Necessary." United honors these plan terms when adjudicating non-mental health claims for coverage.

48.    United's administration of Plaintiff's Plan to deny her claims violates the requirements of the Federal Parity Act. United interpreted Plaintiff's Plan to cover nutritional counseling for non-mental health medical conditions, but not for eating disorders, and to cover nutritional counseling by licensed or registered dietitians for other health conditions, but not for eating disorders.

14

## VIOLATION OF TIMOTHY'S LAW

49.     United's administration of Plaintiff's Plan is also subject to New York's mental health parity law, known as Timothy's Law. This law provides that an insurer offering a health insurance policy in New York that covers inpatient hospital care or physician services, such as United in this case, must provide "broad-based coverage for the diagnosis and treatment of mental, nervous or emotional disorders or ailments, however defined in such policy, at least equal to the coverage provided for other health conditions." N.Y. Ins. Law § 3221(l)(5)(A).

50.     In order to provide mental health coverage that is "at least equal" or "comparable" to coverage for other health conditions, United may not impose restrictions on mental health care that exceed those applicable to medical/surgical care.

51.     Yet, United has done just that. It interpreted Plaintiff's Plan to cover nutritional counseling for non-mental health conditions, but not for eating disorders. It also interpreted Plaintiff's Plan to cover nutritional counseling by licensed or registered dietitians for non-mental health conditions, but not for eating disorders.

## VIOLATION OF THE ACA'S PROVIDER ANTI-DISCRIMINATION MANDATE

52.     The Affordable Care Act explicitly precludes discriminating against provider types with respect to coverage for health care services, stating in Section 2706 (42 U.S.C. § 300gg-5) as follows:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law.

The provision has been incorporated into ERISA through 29 U.S.C. § 1185d.

53.     United's interpretation of Plaintiff's Plan as precluding coverage for nutritional counseling provided by licensed dietitians violates this provision by precluding dieticians from

providing covered services within the full scope of their license, but not so limiting other health care professionals.

### ADDITIONAL ALLEGATION RELATED TO UNITED'S
### CONFLICT OF INTEREST AND BREACH OF DUTY OF LOYALTY

54.     United's misconduct was not an innocent mistake. Instead, it was driven by United's own financial interests. United elevated its own interests above the interests of plan participants and beneficiaries. United sacrificed the interests of insureds so that it could artificially decrease the number and value of claims it was required to pay from its own assets (e.g., with respect to fully-insured plans) and the assets of its employer-sponsor customers (e.g., with respect to self-funded plans). Moreover, by prioritizing the assets of its employer-sponsored customers over the interests of participants and beneficiaries, United also advanced its own interests in retaining and expanding its business with such customers.

### CLASS CLAIMS

55.     Plaintiff brings Counts I, II and V on her own behalf and on behalf of the following Class:

> all participants or beneficiaries in ERISA plans whose claim(s) for nutritional counseling from a dietician to treat an eating disorder were categorically denied by United as not covered under the applicable plan, where United interpreted such plan to cover nutritional counseling for medical conditions.

56.     Plaintiff brings Count III and IV on her own behalf and on behalf of the following Class:

> all New York insureds whose insurance plan is subject to Timothy's Law and whose claim(s) for nutritional counseling from a dietician to treat an eating disorder were categorically denied by United as not covered under the applicable plan, where United interpreted such plan to cover nutritional counseling for medical conditions.

5944270.1

57.    Plaintiff brings Count V on her own behalf and on behalf of the following Class:

all participants or beneficiaries in ERISA plans whose claim(s) for nutritional counseling from a dietician to treat an eating disorder were categorically denied by United as not covered under the applicable plan, where United interpreted such plan to cover nutritional counseling when provided by other types of providers.

## COMMON CLASS CLAIMS, ISSUES AND DEFENSES

58.    Common class claims, issues and defenses exist for one or more of the Classes, including, but not limited to, the following:

1.    Whether United was required to comply with the ACA's Essential Health Benefit and Parity mandates;

2.    Whether such mandates prohibit the categorical denials at issue here;

3.    Whether United was required to comply with Timothy's Law;

4.    Whether Timothy's Law prohibits the categorical denials at issue here;

5.    Whether United was required to comply with the ACA's anti-discrimination provision;

6.    Whether the ACA's anti-discrimination provision prohibits the categorical denials at issue here; and

7.    What remedies are available to members of each of the Classes.

## ADDITIONAL CLASS ACTION ALLEGATIONS

59.    The members of the Classes are so numerous that joinder of all members is impracticable. United is one of the largest insurers nationwide, including in New York. Upon information and belief, the Classes each consist of at least hundreds of subscribers who are subject to United's policies that are at issue in this case, although such information is solely in the possession of United.

60.    Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of each Class, including the class action claims, issues and defenses listed above.

5944270.1

61.    Plaintiff's claims are typical of the claims of the Classes' members because, as a result of the conduct alleged herein, United has breached its legal obligations to Plaintiff and the Classes through and by uniform patterns or practices as described above.

62.    Plaintiff will fairly and adequately protect the interests of the members of the Classes, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and health care litigation (including under both ERISA and state laws), and has no interests antagonistic to or in conflict with those of the Classes. For these reasons, Plaintiff is an adequate class representative under Fed. R. Civ. P. 23.

63.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all members of the Classes is impracticable. Further, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Because this case involves Class members who suffer from eating disorders, a recognized mental health condition, it can be anticipated that many Class members would be unwilling to have their conditions become public knowledge or would be too intimidated to prosecute their individual claims. The class action process allows a brave individual such as Plaintiff to fight not only for her rights but for the rights of others who are similarly situated. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

### COUNT I

64.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

65.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

5944270.1

66.    Defendants interpreted Plaintiff's Plan to cover nutritional counseling for medical conditions, but not for mental health conditions such as eating disorders.

67.    In doing so, Defendants violated their legal duty to comply with the ACA's Essential Health Benefit and Parity mandates.

68.    Plaintiff was harmed by Defendants' actions because Plaintiff's claims were categorically rejected for an illegal reason and she was therefore illegally deprived of insurance benefits to which she asserted entitlement.

## COUNT II

69.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

70.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

71.    Defendants interpreted Plaintiff's Plan to cover nutritional counseling by licensed or registered dietitians for medical conditions, but not for mental health conditions such as eating disorders.

72.    In doing so, Defendants violated their legal duty to comply with the ACA's Essential Health Benefit and Parity mandates.

73.    Plaintiff was harmed by Defendants' actions because Plaintiff's claims were categorically rejected for an illegal reason and she was therefore illegally deprived of insurance benefits to which she asserted entitlement.

## COUNT III

74.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

5944270.1

75.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), or alternatively pursuant to an implied private right of action to enforce Timothy's Law.

76.    Defendants interpreted Plaintiff's Plan to cover nutritional counseling for medical conditions, but not for mental health conditions such as eating disorders.

77.    In doing so, Defendants violated their legal duty to comply with Timothy's Law.

78.    Plaintiff was harmed by Defendants' actions because Plaintiff's claims were categorically rejected for an illegal reason and she was therefore illegally deprived of insurance benefits to which she asserted entitlement.

**COUNT IV**

79.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

80.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), or alternatively pursuant to an implied private right of action to enforce Timothy's Law.

81.    Defendants interpreted Plaintiff's Plan to cover nutritional counseling provided by licensed or registered dietitians for medical conditions, but not for mental health conditions such as eating disorders.

82.    In doing so, Defendants violated their legal duty to comply with Timothy's Law.

83.    Plaintiff was harmed by Defendants' actions because Plaintiff's claims were categorically rejected for an illegal reason and she was therefore illegally deprived of insurance benefits to which she asserted entitlement.

**COUNT V**

84.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

5944270.1

85.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

86.     Defendants interpreted Plaintiff's Plan to cover nutritional counseling to treat eating disorders provided by some types of providers, but not dieticians.

87.     In doing so, Defendants violated their legal duty to comply with the ACA's anti-discrimination provision.

88.     Plaintiff was harmed by Defendants' actions because Plaintiff's claims were categorically rejected for an illegal reason and she was therefore illegally deprived of insurance benefits to which she asserted entitlement.

## COUNT VI

89.     Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

90.     This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

## COUNT VII

91.     Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

92.     This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

93.     By engaging in the misconduct described herein, Defendants were unjustly enriched in two ways: first, with regard to fully-insured plans or plans that include a stop-loss provision requiring Defendants to pay all benefits above a certain threshold, they avoided paying

5944270.1

benefits out of their own funds and/or the funds of their corporate affiliates; second, with regard to other self-funded plans, Defendants charged their corporate customers fees for serving as claims administrator while improperly denying benefits based on invalid or improper reasons as detailed herein, and also lowered costs for its corporate customers, allowing Defendants to retain current customers and expand their business to new customers.

94.     It would be inequitable to allow Defendants to retain these benefits, in light of Defendants' misconduct. Thus, Plaintiff and the Count VII Class are entitled to appropriate equitable relief, including but not limited to an appropriate monetary award pursuant to 29 U.S.C. § 1132(a)(3)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in her favor against Defendants as follows:

A.     Certifying the Classes and appointing Plaintiff as Class Representative;

B.     Declaring that Defendants violated their legal obligations in the manner described herein;

C.     Permanently enjoining United from engaging in the misconduct described herein;

D.     Ordering Defendants to reprocess all wrongfully denied claims without the illegal limitations described herein and, if United determines upon reprocessing that the treatment was covered, to pay any resulting benefits, with interest;

E.     Ordering Defendants to make an equitable surcharge payment to Plaintiff and members of the Classes;

F.     Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

G.     Granting such other and further relief as is just and proper in light of the evidence.

5944270.1

Dated: New York, New York                s/ D. Brian Hufford
        March 20, 2017                 D. Brian Hufford
                                            Jason S. Cowart
                                            ZUCKERMAN SPAEDER LLP
                                            399 Park Avenue, 14th Floor
                                            New York, NY 10022
                                            212.704.9600
                                            212.704.4256 (fax)
                                            dbhufford@zuckerman.com
                                            jcowart@zuckerman.com

                                            Meiram Bendat (*pro hac vice* forthcoming)
                                            PSYCH-APPEAL, INC.
                                            8560 West Sunset Boulevard, Suite 500
                                            West Hollywood, CA 90069
                                            310.598.3690 Ext: 101
                                            888.975.1957 (fax)
                                            mbendat@psych-appeal.com

                                            *Counsel for Plaintiff and the Putative Classes*

5944270.1