UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
JAMIE BUSHELL,
                            Plaintiff,

                -v-

UNITEDHEALTH GROUP INC., et al.,
                            Defendants.

17-CV-2021 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Jamie Bushell alleges that her health insurer discriminates against those suffering from mental illness, in violation of state and federal mental-health-parity laws. Defendants move to dismiss. For the reasons that follow, the motion is granted in part and denied in part.

**I.    Background**

Bushell suffers from anorexia nervosa, a mental illness. (Compl. ¶ 1.) To treat her illness, she sees a registered dietician about once a week for nutritional counseling. (Compl. ¶¶ 1, 24.) Her insurer—the defendants in this case, collectively "United"—refuses to pay for those sessions, asserting that nutritional counseling is not covered under Bushell's health insurance plan. (Compl. ¶ 3.) At the same time, however, the Complaint alleges that United does cover nutritional counseling for those suffering from non-mental-health conditions, like diabetes. (Compl. ¶ 4.)

Bushell filed this suit under the ERISA civil enforcement provisions in 29 U.S.C. § 1132(a). She alleges that United discriminates against those suffering from mental illnesses, in violation of (1) the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), codified at 29 U.S.C. § 1185a, which prohibits discrimination against people suffering from mental illness; and (2) New York's "Timothy's Law," N.Y. Ins. Law § 3221(*l*)(5)(A), which

1

similarly requires that those suffering from mental illness receive equal coverage to those suffering from other health conditions. United has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, courts must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**III.    Discussion**

United moves to dismiss the entire Complaint. In her opposition brief, Bushell seeks to withdraw Counts Two, Four, and Five, without prejudice to renewal. (*See* Dkt. No. 5 at 24 & n.2.) That motion is granted, leaving Counts One, Three, Six, and Seven.

United's three core arguments are (1) that Timothy's Law does not provide a private right of action, (2) that the Complaint fails to plausibly allege a violation of the Parity Act, and (3) that three of the defendants are not proper parties. Each argument is discussed in turn.

**A.     May Bushell Assert Claims Under Timothy's Law?**

Count Three alleges violations of New York's mental health parity law, known as Timothy's Law. Timothy's Law requires, among other things, that "[e]very insurer . . . which provides coverage for inpatient hospital care or coverage for physician services shall provide as

part of such policy broad-based coverage for the diagnosis and treatment of mental, nervous or emotional disorders or ailments, however defined in such policy, at least equal to the coverage provided for other health conditions." N.Y. Ins. Law § 3221(*l*)(5)(A).

United argues that Timothy's Law does not have a private right of action and that only the state government can enforce it. Bushell counters (a) that Timothy's Law does have a private right of action, and (b) that even if it does not, she can still sue for violations of Timothy's Law because its provisions are incorporated into her plan.

### 1. Does Timothy's Law Have an Implied Private Right of Action?

There is no dispute that Timothy's Law lacks an *express* private right of action. The question is whether it has an *implied* private right of action.

In New York, the essential factors governing whether an implied private right of action exists are: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989). The third factor is the most critical. *Carrier v. Salvation Army*, 88 N.Y.2d 298, 302 (1996).

A good case to start with is *Hudes v. Vytra Health Plans Long Island Inc.*, 295 A.D.2d 788, 788 (N.Y. App. Div. 3d Dep't 2002), in which the Appellate Division held that there was no private right of action to enforce a New York insurance law that is codified in the same section as Timothy's Law. *See* N.Y. Ins. Law § 3221(k)(11). There, patients sued to enforce a provision that regulated coverage for chiropractic treatment. The court concluded that although the patients were part of the class for whose benefit the statute was enacted, a private right of action should not be inferred, in large part because the statute envisioned state enforcement rather than private suits. Relying on the most important of the three factors—avoidance of unwarranted

3

interference with the legislative scheme—the court held that "where a regulatory agency has either been selected or, in fact, serves to administratively enforce the duties created by a statute, 'a private right of action should [ordinarily] not be judicially sanctioned.'" *Id.* at 789 (alteration in original) (quoting *Sheehy*, 73 N.Y.2d at 634–635). And since the statute gave the New York Superintendent of Insurance broad regulatory powers over the health plans at issue, the court concluded that "[the] recognition of a private right of action in favor of the patients would not advance the legislative purpose and would be inconsistent with the legislative scheme." *Id.* at 790; *see also Mark G. v. Sabol*, 93 N.Y.2d 710, 720 (1999) (rejecting private right of action because the critical third factor was not satisfied).

Here, too, the third factor forecloses a private right of action. Of particular relevance is an amicus brief filed by the New York State Department of Financial Services ("DFS") in *Doe v. Oxford Health Insurance, Inc.*, 17 Civ. 316 (E.D.N.Y. 2017). That case, like this one, involves a suit against United for violations of Timothy's Law. After United filed a motion to dismiss, Judge Weinstein invited the DFS to opine on whether Timothy's Law includes a private right of action.[1] The DFS is the successor agency to the Insurance Superintendent, which is the agency mentioned in Timothy's Law. The DFS took the position that Timothy's Law does not have a private right of action, and that a private right of action would upend the legislative enforcement scheme. (*See* Dkt. No. 31-1.)

The DFS reasoned that determinations of whether the law was violated require complex, fact-bound determinations about medical necessity, and that the DFS has implemented a

---

[1] As with the plan documents, the Court may consider the amicus brief at the motion-to-dismiss stage. *See, e.g., Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (noting that, on motion to dismiss, courts may consider "documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken").

comprehensive system to evaluate appeals following denials of coverage. (*See* Dkt. No. 31-1 at 12.) Therefore, allowing people to litigate these issues in court might yield duplicative or inconsistent results. *See also Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 779 (S.D.N.Y. 2017) ("As courts consistently recognize, the [New York Insurance Law's] licensing scheme reflects the legislature's judgment that New York's administrative apparatus, and not courts, should be charged with making licensing determinations, and meting out punishments for licensing violations); *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) ("[Inferring] a private right of action would not be consistent with the legislative scheme, which establishes the procedures for enforcement of various provisions of the Insurance Law by the Superintendent of Insurance.").

Finally, it is worth noting that the only court to have directly ruled on the issue, albeit not in published form, held that Timothy's Law did not have a private right of action. *See Kamins v. United Heath-Care Ins. Co. of N.Y.*, No. 14-64276 (N.Y. Sup. Ct. Mar. 10, 2016) (Dkt. No. 33-1). For the same reason outlined by the DFS, the *Kamins* court concluded that a private right of action would usurp, rather than promote, the enforcement mechanism provided by the law. (Dkt. No. 33-1 at 5.)

Accordingly, the Court concludes that Timothy's Law lacks a private right of action.

### 2. If Timothy's Law Lacks a Private Right of Action, Can Bushell Sue for Violations of Timothy's Law by Virtue of Its Incorporation into Bushell's Plan?

Having concluded that Timothy's Law does not have a private right of action, the Court turns to Bushell's alternative argument: that because Timothy's Law is incorporated into her plan, she can sue under ERISA for violation of Timothy's Law just as she could sue for violation of any other contractual provision. *See* 29 U.S.C. § 1132(a)(1)(B) (allowing private suits "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms

5

of the plan"). In other words, Bushell argues that since the statutory obligation is incorporated into her insurance contract, she can sue for violation of her plan terms, which is distinct from merely suing for violation of the law itself.

The relevant plan provision, located in Bushell's certificate of coverage, reads:

> **Conformity with Law**: Any term of this Certificate which is in conflict with New York State law or with any applicable federal law that imposes additional requirements from what is required under New York State law will be amended to conform with the minimum requirements of such law.

(Dkt. No. 32 at 1–2.) Bushell contends that this provision allows her to sue for violations of Timothy's Law notwithstanding the lack of a private right of action.

While creative, this argument does not prevail. Though there is no directly applicable precedent, the Supreme Court's opinion in *Astra USA, Inc. v. Santa Clara County* is instructive. 563 U.S. 110 (2011). That case dealt with an agreement between the government and drug companies, in which the drug companies agreed to abide by certain price cap regulations. A private plaintiff then sued the drug companies for violating the price caps, but a court ruled that the price-cap regulation lacked a private right of action. The private plaintiff then argued that it was a third-party beneficiary of the agreement between the government and the drug companies and could therefore challenge the drug companies' breach of that agreement.

The Supreme Court, however, unanimously rejected the attempt to use state contract law to assert a claim for which there was no federal private right of action. The Court noted that, as here, the contract in question contained no negotiable terms but "simply incorporate[d] statutory obligations and record[ed] the [defendant's] agreement to abide by them." *Id.* at 118. Accordingly, the Court concluded that the contract claim "is in essence a suit to enforce the statute itself" and therefore, "[t]he absence of a private right to enforce the [statute] would be rendered meaningless if [a plaintiff] could overcome that obstacle by suing to enforce the

6

[contract] instead." *Id.* The Court cited with approval an earlier Second Circuit opinion which held that when a government contract merely confirms a statutory obligation, "a third-party private contract action [to enforce that obligation] would be inconsistent with . . . the legislative scheme . . . to the same extent as would a cause of action directly under the statute." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983) (internal quotation marks omitted)).

Granted, both *Astra* and *Grochowski* dealt with third-party beneficiary claims, whereas Bushell asserts that she was herself a signatory to the contract. In other words, the contracts in those two cases were between A and B, and plaintiff C tried to sue as a third-party beneficiary. By comparison, Bushell claims that she herself contracted with United and that United violated the terms of the contract. Moreover, those plaintiffs used state law claims to circumvent the lack of a federal right of action, whereas Bushell tries to use federal law to circumvent the lack of a state right of action. Nevertheless, the principle annunciated in those cases still holds: As in *Astra*, the relevant contractual provision here is a milquetoast commitment "simply incorporat[ing] statutory obligations and record[ing] the [defendant's] agreement to abide by them." *Astra*, 563 U.S at 118. As in *Astra*, "[t]he statutory and contractual obligations, in short, are one and the same." *Id.* And since there is no private right of action to enforce the regulation directly, Bushell cannot enforce it under the guise of an ERISA claim. A conclusion to the contrary would mean that this one provision allows suit for violation of any state or federal law.

The strongest case for Bushell is *A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1305 (D. Or. 2014), which held that an ERISA plaintiff could sue under Oregon's mental-health-parity law because the state statute had become part of the terms of the plan. The court noted that "the general rule of insurance law—that insurance contracts are

7

subject to and incorporate relevant state law regulating insurance—applies with equal force to ERISA insurance plans." *Id.* The court concluded that "because the ERISA civil enforcement provision allows courts to enjoin or provide other appropriate equitable relief when a practice violates any 'terms of the plan,' . . . ERISA provides courts with the power to enjoin violations of state law regulating insurance that have become part of the terms of the plan." *Id.*

But *Legaard* does not go as far as Bushell needs it to. That case says nothing about private rights of action, suggesting that it was undisputed that the Oregon law provided a private right of action. The case merely held that violations of a state law—a law which, presumably, had a private right of action—can be remedied through ERISA civil enforcement. Therefore, *Legaard* is not instructive here, where the Court has concluded that the state law provides no private right of action.

Accordingly, the Court concludes that Bushell cannot sue for a violation of Timothy's Law. Count Three is therefore dismissed.

### B. Does the Complaint Adequately Allege a Violation of the Federal Parity Act?

Count One asserts claims under the federal Parity Act. United argues that the Complaint fails to state a claim. The Court first reviews the Parity Act's statutory and regulatory framework, then turns to United's arguments for dismissal.

#### 1. The Statutory and Regulatory Framework

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016). The Parity Act provides, in relevant part, that certain health plans, like Bushell's, must ensure that:

> the treatment limitations applicable to . . . mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii). Put simply, the Parity Act prohibits the imposition of more stringent treatment limitations for mental health treatment than for medical treatment.

A key issue is how to define "treatment limitation." The Parity Act defines it as "includ[ing] limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii). The regulations promulgated pursuant to the Parity Act expand on this definition by breaking it down into two categories: quantitative treatment limitations and nonquantitative treatment limitations. Quantitative limitations "are expressed numerically (such as 50 outpatient visits per year)." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations—or NQTLs—"otherwise limit the scope or duration of benefits for treatment." *Id.*

In all, the Parity Act would be violated here if (1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation—either quantitative or nonquantitative—for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared. *Id.* § 2590.712(c)(2)(i).

The first two elements are not in dispute. However, United argues (a) that the Complaint does not adequately allege an NQTL, and (b) that the Complaint does not adequately allege that

9

Bushell's treatment is in the same classification as the diabetes treatment that United allegedly covers. Each argument is discussed below.[2]

### 2. Does the Complaint Adequately Allege that United Applied a Nonquantitative Treatment Limitation to Anorexia that is More Restrictive Than a Nonquantitative Treatment Limitation Applied To Medical Benefits?

The key issue as to Bushell's Parity Act claim is whether the Complaint adequately alleges that United applied an NQTL to mental health treatment more stringently than it did to other medical treatment.

The federal regulations define NQTLs as "limit[ing] the scope or duration of benefits for treatment." *Id.* The regulations provide an illustrative list of NQTLs, which include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

It is important to note that the regulations do not prohibit health plans from saying "treatment *x* is covered for medical condition *y* but not for mental-health condition *z*." The regulations simply require that "any processes, strategies, evidentiary standards, or other factors used in applying the NQTL to mental health or substance use disorder benefits in the classification be comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712(c)(4). In other words, as long as the insurer applies same *process*, it is not a problem if the resulting coverage decision

---

[2] Because the Court holds that the Complaint adequately alleges a nonquantitative treatment limitation, it does not reach the question whether the exclusion of nutritional counseling could constitute a quantitative treatment limitation.

differs for medical and mental-health treatments. *See Natalie V. v. Health Care Serv. Corp.*, No. 15 C. 09174, 2016 WL 4765709, at *5 (N.D. Ill. Sept. 13, 2016) ("[A]s long as a health insurance company used comparable processes, strategies, evidentiary standards, or other factors when applying treatment limitations to all benefits in a group health plan, that plan was Parity Act-compliant.").

For this reason, United argues that the Complaint alleges only disparate results—i.e. that Bushell was denied nutritional counseling while a diabetes patient was not—but does not allege a disparate process in the way these two decisions were made. United argues that Bushell must allege that United employed different processes when making the respective decisions about nutritional counseling. Bushell responds that the Complaint adequately alleges a disparate process because it alleges that United categorically excludes nutritional counseling for *all* eating disorders yet offers nutritional counseling for *some* medical conditions, like diabetes. Bushell frames this categorical exclusion as a form of process: if a diabetes patient sought nutritional counseling, United would make an individualized decision on coverage, whereas if an anorexia patient sought nutritional counseling, United would flatly deny coverage.

The ultimate question at this stage is about the proper pleading standard for categorical coverage exclusions. Is it enough to allege that a mental-health treatment is categorically excluded while a corresponding medical treatment is not? Or must the complaint allege facts showing that the process by which the categorical exclusion was adopted was disparate? The Court is aware of no case law addressing this question head-on.

This is a close call, but the Court concludes that the Complaint properly alleges a discriminatory NQTL. This conclusion is driven by three considerations.

First, the examples included in the federal regulations indicate that categorical exclusions applying solely to mental-health treatment are considered discriminatory NQTLs. For example, the regulations describe a plan that automatically excludes coverage for antidepressants that have a "black box" warning—a warning that the drug carries serious risk—but covers non-antidepressant black-box medications if the prescribing doctor gets preauthorization. 29 C.F.R. § 2590.712(c)(4)(iii), ex. 5. The regulations conclude that this plan would violate the Parity Act because "[its] unconditional exclusion of antidepressant drugs given a black box warning is not comparable to the conditional exclusion for other drugs with a black box warning." *Id.* The same goes for a plan that automatically excludes coverage for inpatient substance use treatment in any setting outside of a hospital but has no such exclusion for medical treatment. 29 C.F.R. § 2590.712(c)(4)(iii), ex. 9. To be sure, these examples illustrate only what constitutes a violation of the law, rather than what the proper pleading standard is. Nevertheless, these examples lend support to Bushell's argument that a categorical exclusion *is itself* a form of process.

Second, the case law, meager though it is, comports with the notion that it is enough to plausibly plead that there is a categorical exclusion for mental health benefits but not for medical benefits. *See Natalie V.*, 2016 WL 4765709, at *8 (denying motion to dismiss a categorical-exclusion claim because "[d]iscovery will reveal what sort of process, strategy, evidentiary standard, or other factors [the insurer] used in setting its treatment limitations, including its blanket ban on residential treatment centers for mental illness"); *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015) (denying motion to dismiss in categorical-exclusion case); *Legaard*, 35 F. Supp. 3d at 1315 (granting summary judgment for plaintiff on categorical-exclusion claim).

Finally, the nature of NQTL Parity Act claims counsels against a rigid pleading standard. While a plaintiff may be able to find out what process her insurer used to deny *her* claim, it is much more difficult to find out the process her insurer uses to evaluate analogous medical claims. The purpose of discovery is to allow plaintiffs access to this sort of information. If the Court required Bushell's complaint to specify the exact process by which United reached its decision on anorexia cases *and* the exact process it employed for diabetes treatment, it would likely create a serious obstacle to meritorious Parity Act claims. Tellingly, the only case cited by the parties dismissing an NQTL claim for insufficiently alleging disparate process came on summary judgment. *See Tedesco v. I.B.E.W. Local 1249 Ins. Fund*, No. 14 Civ. 3367, 2015 WL 6509039, at *7 (S.D.N.Y. Oct. 28, 2015) (granting summary judgment because the insurer applied the same process to both medical and mental-health treatment), *vacated on other grounds*, 674 F. App'x 6 (2d Cir. 2016).

Accordingly, the Court concludes that the Complaint adequately alleges that United applied an NQTL more stringently to mental-health benefits than to medical benefits.

### 3. Does The Complaint Adequately Allege that Nutritional Counseling for Anorexia is in the Same Classification as Nutritional Counseling for Diabetes?

The final issue as to Count One is whether the Complaint adequately alleges that nutritional counseling for anorexia is comparable to nutritional counseling for diabetes.

The Parity Act prohibits disparate coverage among only treatments that belong in the same classification. The regulations list six classifications: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *See* 29 C.F.R. § 2590.712(c)(2)(ii).

United argues that the Complaint does not specifically allege that Bushell's nutritional counseling for anorexia is in the same classification as nutritional counseling for diabetes. But

13

while it is true that the Complaint does not address classifications, Bushell correctly points out that both belong in classification (4) above, as they are outpatient, out-of-network treatments. Dismissing the Complaint based on this single omission—an omission that would be remedied by adding a single sentence—would do nothing but needlessly prolong this litigation, and the Court declines to do so. *See United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14 Civ. 9107, 2017 WL 4326523, at *5 (S.D.N.Y. Sept. 27, 2017).

In sum, Bushell plausibly alleges a violation of the Parity Act. Count One survives.

### C. Does The Complaint Adequately Assert a Claim for Injunctive Relief Under 29 U.S.C. § 1132(a)(3)(A)?

Count Six incorporates the Complaint's other factual allegations by reference and states:

> This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

(Compl. 90.)

United first argues that this language is impermissibly vague. But while Court Six is indeed short on detail, it is quite apparent that it is based on the same alleged breach as Bushell's Parity Act claim. It simply says that if the relief sought under § 1132(a)(1)(B) proves unavailable, Bushell seeks that relief under § 1132(a)(3)(A).

United next argues that Count Six is "nothing more than a contingent claim pled in the event that the Court dismisses [Bushell's] equitable claims [under § 1132(a)(1)(B)]." (Dkt. No. 21 at 21.) But there is nothing wrong with alternative pleading; it is a common practice in the federal courts. And the Second Circuit has held that, at the pleading stage, plaintiffs may plead alternative claims under § 502(a)(1)(B) and § 502(a)(3). *See New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (holding that district court prematurely dismissed § 502(a)(3) claim because "it is not clear at the motion-to-dismiss stage of

the litigation that monetary benefits under § 502(a)(1)(B) alone will provide [the plaintiff] a sufficient remedy").

Accordingly, Count Six survives.

### D. Does The Complaint Adequately Allege Unjust Enrichment?

Count Seven alleges that United was unjustly enriched by its alleged discrimination, and that it should disgorge those proceeds.

United's argument for dismissal is premised upon its position that Bushell did not adequately plead a violation of federal mental-health-parity laws. But since the Court has already concluded that Bushell did state such a claim, Count Seven survives as well.

### E. Who Are the Proper Defendants?

The final issue relates to the entities named as defendants. The Complaint names four entities: UnitedHealth Group, Inc. ("UHG"); Oxford Health Plans, Inc. ("OHP"); Oxford Health Insurance, Inc. ("OHI"); and Oxford Health Plans (NY), Inc. ("OHP-NY").

United concedes that OHI is a proper defendant, but contests the other three. In response, Bushell agrees to voluntarily dismiss her claims against OHP and OHP-NY, without prejudice to renewing her claims against those two entities in the future. (Dkt. No. 24 at 6 n.3.) That request is granted.

This leaves us with the question whether UHG is a proper defendant. The Second Circuit has held that, in a beneficiary's suit to enforce the terms of a plan under 29 U.S.C. § 1132(a)(1)(B), the proper defendants are (1) the plan, (2) the plan administrator, (3) the plan trustee, or (4) a claims administrator who exercises total control over claims for benefits. *New York State Psychiatric Ass'n*, 798 F.3d at 133. Defendants argue that the Complaint does not adequately allege that the UHG fits into any of those categories.

15

The Complaint's allegations relating to UHG are: (1) that UHG fully owns and controls OHI, which is a proper party; (2) that the letter denying Bushell's claims bore a logo reading "UnitedHealthcare/Oxford"; (3) that UHG caused OHI to promulgate the coverage guidelines that led to the denials of Bushell's claims; (4) that UHG had oversight and control over OHI's exercise of discretion in connection with the administration of Bushell's plan; and (5) that as a result of the above, UHG is an ERISA fiduciary. (*See* Dkt. No. 24 at 7–8.)

Bushell first argues that she can sue UHG because it is the parent company of OHI. She cites a host of cases upholding the inclusion of parent companies in suits against their subsidiaries. (*See* Dkt. No. 24 at 7.) However, none of these cases—with one exception—are ERISA cases. There is no precedent for the proposition that subsection (a)(1)(B) permits beneficiaries of a plan to sue the parent company of a proper defendant. The sole ERISA case cited for that proposition, *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), did not deal with a suit to recover benefits, and is thus inapplicable in a case about subsection (a)(1)(B). Moreover, the parent company in that case had far more involvement than is alleged in Bushell's Complaint. *See id.* at 761 ("[The parent company] conceded . . . that it exercises final control over benefits appeals"). Accordingly, the mere fact that UHG is OHI's parent is not enough to make it a proper defendant.

Bushell next argues that she can sue UHG because it "exerts discretion over the policies and practices that led to the unlawful activity." (Dkt. No. 24 at 6.) But that is not enough either. The Second Circuit has held a claims administrator can be sued under subsection (a)(1)(B) if it "has *sole and absolute discretion* to deny benefits and makes *final and binding decisions* as to appeals of those denials." *New York State Psychiatric Ass'n*, 798 F.3d at 132 (emphasis added). The Second Circuit did not express an opinion on "whether a claims administrator that exercises

less than total control over the benefits denial process is an appropriate defendant." *Id.* at n.5. However, other courts have since held that that "discretion alone is not enough to meet the statutory definition of an ERISA Plan administrator." *Moses v. Revlon Inc.*, No. 15 Civ. 4144, 2016 WL 4371744, at *3 (S.D.N.Y. Aug. 11, 2016) (quoting *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 107 (S.D.N.Y. 2008)) (internal quotation marks omitted), *aff'd*, 691 F. App'x 16 (2d Cir. 2017); *see also Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 631 (N.D.N.Y. 2016) (dismissing defendant because "there is no governing precedent for holding a claims administrator with less than total control responsible"). The Complaint's conclusory allegation that UHG "exercise[d] discretion in connection with the administration of Plaintiff's Plan" (Compl. ¶ 12) does not suffice. *Cf. Atzin v. Anthem, Inc.*, No. 17 Civ. 6816, 2018 WL 501543, at *3 (C.D. Cal. Jan. 19, 2018) (denying motion to dismiss because the complaint had detailed allegations of control).

Since neither of Bushell's arguments passes muster, and since the remaining allegations against UHG are not enough to make it a proper defendant, UHG is dismissed from this suit. For the same reason, Bushell's motion to add United HealthCare Insurance Co. as a defendant, which is wholly based on the fact that it is also a parent of OHI, is denied. (*See* Dkt. No. 24 at 6 n.3.)

## IV. Conclusion

For the foregoing reasons, the motion dismiss is GRANTED in part and DENIED in part, with the following results:

- Counts One, Six, and Seven survive.
- Count Three is dismissed with prejudice.
- Counts Two, Four, and Five are dismissed without prejudice.
- Defendants Oxford Health Plans, Inc. and Oxford Health Plans (NY), Inc. are dismissed without prejudice.

- Defendant UnitedHealth Group, Inc. is dismissed with prejudice.

- The motion to add United HealthCare Insurance Co. as a defendant is denied.

The remaining defendant shall file an answer within 14 days of the date of this order.

The Clerk of Court is directed to close the motion at Docket Number 20.

SO ORDERED.

Dated: March 27, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge